## Raby, Executor of Cell, *versus* Cell.

1. To submit a case to the jury there must be evidence of such a character that the mind may reasonably rest upon it, though it may be with some hesitation. A jury ought never to be left to mere conjecture, where sympathy or some other equally improper motive will be sure to turn the scale. It is not too much to insist that there shall be evidence of circumstances on which the conclusion asked for may be reasonably predicated.

2. Where the verdict for the plaintiff would have been without sufficient evidence to sustain it the court was right in taking the case from the jury.

June 21st 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and SERRETTT, JJ.

Error to the Court of Common Pleas of *Franklin county* : Of May Term 1877, No. 226.

Debt by Adam Raby, executor of John Cell, deceased, against John S. Cell, upon the following instrument of writing :—

"Saint Thomas, May 1st 1869.

"For value received, I acknowledge myself indebted to my father, John Cell, in the sum of three thousand dollars, with interest from April 1st 1869, the interest to be paid annually ; my father, John Cell, agreeing not to collect the principal unless his circumstances are such as actually require it.

(Signed)          JOHN S. CELL [SEAL]."

Endorsed thereon were credits for interest for the years 1870, 1871, 1872 and to April 1873 ; together with a credit on the principal as follows : " April 1st 1872, paid on the within note $1280 dollars."

The defendant pleaded payment, payment with leave, &c., to which plaintiff replied *non solvit* and issue.

The following facts were admitted on the trial : That John Cell died in January 1874 ; that the consideration of the note was a prior indebtedness to John Cell ; that at the date of the single bill, John Cell, the payee, had two children living, John S. Cell and Rebecca Raby, and three grandchildren, the children of Christian Cell ; that he had shortly before the date of the single bill, namely, on the 12th of January 1869, married a second wife, who survived him ; that he had a farm in Peters township of 128 acres, worth $100 per acre ; also two houses and a barn and eight acres of land in Bridgeport, worth $6000 ; also ten acres of mountain land worth $150 ; that his debts were at the date of the single bill $6700, which continued unpaid until his death, and in addition thereto, debts to the amount of $1866 were contracted between the date of the note and his death, which were also unpaid at his death.

It was in evidence that Cell, the father, was in debt, and that to demands of various parties for payment he had replied : " That is all I can pay just now, that that was all he had ; that he

[Raby *v.* Cell.]

had money coming from different persons, and could not get it in; that that was all he could pay at the time; that he had not money to pay his taxes, and had asked for the loan of some; that he generally complained of being bad off for money; said he had money standing out; that he could not collect it."

It also appeared that the son, John S. Cell, had paid $200 on account of an indebtedness of his father, while the latter was ill, and without his solicitation.

The plaintiff offered to prove that John Cell, Sr., was largely indebted to the witness subsequent to the giving of the note in suit, and that said John Cell gave to the witness as the reason for his not paying the same that he was expecting the money from his son John Cell, the defendant, but that he could not get it from him.

The defendant objected on the ground that the declarations of John Cell, Sr., to the witness in the absence of defendant could not affect his rights or change the terms of the note in suit, which objection the court (Rowe, P. J.) sustained.

The plaintiff also submitted the following points, all of which the court refused and directed a verdict to be found for the defendant:—

1. It is for the jury to say whether the circumstances of John Cell, Sr., the payee in the note in suit, were such as to actually require the payment of the principal in said note mentioned, and in determining this question the jury are not to regard the personal wants of the said John Cell, Sr., but must consider the condition of his estate with reference to the indebtedness which he had contracted, and from this determine whether the contingency expressed in the note had arisen.

2. That if the jury shall find from the evidence that the circumstances of the said John Cell, Sr., did actually require the collection of the note in suit, it is not necessary that the plaintiff should prove an actual demand made by the said John Cell, Sr., in his lifetime for the payment of said principal, but the jury may infer from the payment made by said defendant that such demand was made.

3. That the payment of $1280 by John Cell, the defendant, on the 1st April 1872, was an unequivocal admission on his part that he then knew that the circumstances of his father at that date actually required the payment of the principal mentioned in the note, and by reason of such payment the note in suit became absolute and payable thereafter on demand.

4. That even though the contingency expressed in the note in suit never did arise in the lifetime of John Cell, Sr., the note in suit became absolute and payable on his death.

After verdict and judgment for defendant, plaintiff took this writ, assigning for error the foregoing instruction of the court and the rejection of his evidence.

*Kennedy & Stewart* and *F. M. Kimmell*, for plaintiff in error.
    4 NORRIS—6

[Raby *v.* Cell.]

—The clause in the bill is a latent ambiguity, which could only be interpreted in the light of the circumstances and acts of the party at the date of the bill, and subsequently to the death of the father. Evidence of this condition of things was admitted by the court and should have been permitted to go to the jury on the question involved in the issue. To the importunities of his creditors the father had but one reply, that he had no money. To pay his taxes he had to borrow. We contend that this was the exact condition of things which the father anticipated and for which he provided in the bill. It was not his intention during his lifetime to call for the principal of the bill unless these claims were pressed upon him, and if they were, then the debt was to be paid in full.

*F. S. Stumbaugh* and *J. McDowell Sharpe*, for defendant in error.—We contend that it was the manifest primary intention of the father to make a gift of the principal of the note to his son; that he reserved the right to reclaim the principal only in case his pecuniary circumstances actually required it; that he was to judge when this contingency had occurred, and not the jury, and that his determination that the contingency had in fact occurred was to be evidenced by a demand of the principal from the son, or by some step to collect the same by legal process in his lifetime, of which there was not a scintilla of evidence; that if all the evidence was believed, it did not prove that the pecuniary circumstances of John Cell were such as actually required the payment of the principal; that his estate was solvent, and that the construction of the single bill belonged to the court.

Mr. Justice SHARSWOOD delivered the opinion of the court, October 1st 1877.

There are cases which seem to lie on the very border-line between the provinces of the court and jury, in which the application of the rule that requires them to be carefully distinguished is very difficult. At one time, indeed, it was the admitted doctrine that if there was any, the least evidence, a mere scintilla, the question must be submitted to the jury. But that doctrine has been very justly exploded, both in England and this state. There must be evidence of such a character that the mind may reasonably rest upon it, though it may be with some hesitation. A jury ought never to be left to mere conjecture, when sympathy, or some other equally improper motive, will be sure to turn the scale. It is not too much to insist that there shall be evidence of circumstances of which the conclusion asked for may be reasonably predicated.

This case is on the very dividing-line, and it must be admitted that it is not of easy determination. The decedent expressly agreed, as one of the terms of his loan to his son, not to collect the principal, unless his circumstances were such as actually to require it.

[Raby v. Cell.]

It is conceded that the right to require payment was in him. He died, and we have certainly no direct evidence of any such requisition. Was there evidence of any facts from which the jury might reasonably have drawn such an inference? The learned judge below thought that there was not, and we are not prepared to say that in this there was manifest error.

Two facts are relied on to show that there had been such a demand. The first is that there was a payment to the decedent in his lifetime on account of the principal. But as the decedent might have been satisfied with such part payment—in other words, as his circumstances may have been such as only to require that much, how can it be inferred from that alone that he had demanded the whole? The second is, that the defendant voluntarily paid a bill against his father, without his request or knowledge, while he was sick. But this is more unsubstantial, as a ground of inference, than the first. The act of the son to relieve his father from the importunity of a creditor while he was not in a condition to attend to business, may be referred to his filial affection and gratitude; and after all, it would only be evidence of a demand to that amount. If indeed it had appeared that the deceased had died insolvent, so that the principal was required to pay his just debts, the case presented would have been entirely different. But the evidence fell far short of this. It is admitted that at the date of the note, which was for $3000, the decedent was the owner of real estate worth $18,000 and upwards. This was only four years before his death. That he had debts, and was pressed for payment; that he owed at that time $6700, and that between that and the day of his death his indebtedness had increased $1866, might all well be without his feeling that he ought to call on his son for more of the principal of this note than was actually paid.

As the offer to prove the declaration of the decedent to a third person, that he was expecting money from his son, but could not get it from him, did not specify whether it was before or after the date of the partial payment, it was rightly rejected, even conceding that such a declaration would have been admissible, for if it was prior to the partial payment, it might have referred to the demand for that, and so been entirely inconclusive as to a demand for the whole principal or the balance remaining unpaid.

We think a verdict in favor of the plaintiff would have been without sufficient evidence to sustain it, and the learned judge below was therefore right in taking the case from the jury.

Judgment affirmed.